DELVAUX, by guardian *ad litem*, Appellant, vs. KEWAUNEE, GREEN BAY & WESTERN RAILWAY COMPANY, Respondent.

*September 18—December 7, 1915.*

*Railroads: Injury to boy: Catching on train: Negligence: Questions for jury: Changing verdict.*

In an action for injuries to a boy who was run over on defendant's track either—as he claimed—after a train had been parted into two sections and he was trying to cross the track in front of the rear section, which he supposed was at rest, or—as defendant claimed—when he attempted to catch a ride on the moving cars before the train was parted, it is *held* that the trial court was not clearly wrong in deciding that the evidence conclusively showed that the injury occurred before the train was parted, and in changing the special verdict accordingly and rendering judgment for defendant on the ground that there was no proof of negligence on its part.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

Action to recover for a personal injury. December 4, 1914, *Ernest Delvaux,* a boy a few months over nine years of age, and three other small boys, were playing at a stone pile near defendant's railway tracks in the city of Green Bay, Wisconsin. While so engaged a freight train arrived in the vicinity. At such place such trains were accustomed to be parted into two sections in order to facilitate leaving one section on the west side of Oakland avenue, to be taken care of by the switching crew, and running the other further on, to the depot. To accomplish that and not obstruct Ashland avenue, east of Oakland avenue, it was customary for the engineer to stop his engine before it reached the former and enable the rear brakeman to make the separation at the desired place west of the latter. The understanding was such between the engineer, conductor, and rear brakeman, that the movements usually occurred without using signals, because of the nature of the track and surroundings. The engineer knew, substantially, where to bring his engine to a stand, the rear brakeman where to cut the train, and the engineer about what time to allow for that purpose before starting with the forward section. The cut was usually made by turning the valve on the air line to the brake-control appliance and parting the line, thus setting the brakes on the proposed hind section, and opening the coupling, leaving the forward section free to be moved. On the particular occasion, by some means, *Ernest Delvaux* got in front of moving car wheels so that one crushed his right leg and left foot so part of each member was lost. Some toes were crushed off and found on the track.

The claim of the boy was that the train was parted while moving slowly near where he and the other boys were waiting for an opportunity to cross the track; that after the head section moved away he started to cross supposing that the rear section, as usual, was at rest; that, too late, by due care to discover to the contrary, he tried to escape from the danger but slipped and fell in front of the wheel and was injured. The claim of the defendant was that the boy was in-

jured before the train was parted into two sections, that he and his associates caught on to the side of the moving cars, or tried to do so, and that in movements to that end he got in the way of the car wheel which crushed him. There was very little, if any, believable evidence to corroborate the boy's story that he was injured while trying to cross the track after the train was broken. There was direct evidence from many witnesses that the injury occurred before the train was parted and much evidence to establish facts rendering the story of the boy unworthy of belief.

At the close of the evidence there was a motion for a verdict in defendant's favor upon the ground, among others, that the proofs demonstrated that the injury must have occurred before the train was parted, in which case it was conceded there could not be a recovery, for want of proof of negligence on defendant's part. The motion was denied, and the matter was submitted to the jury, resulting in a special verdict in harmony with the boy's story, and findings in his favor of all facts essential to recovery in his behalf. On motion, the court changed all answers inconsistent with the claim of defendant that the boy was injured before the train was parted, and rendered judgment accordingly.

*M. E. Davis,* for the appellant.

For the respondent there was a brief by *Greene, Fairchild, North, Parker & McGillan,* and oral argument by *H. O. Fairchild.*

The following opinion was filed October 5, 1915:

MARSHALL, J. While counsel for respondent urge upon our attention some reasons why the judgment should be affirmed, even though the ground the trial judge rested the decision on should seem unsound, the conclusion reached by the majority of the members of the court, renders it unnecessary to consider such reasons.

The sole question, therefore, to be determined is: Was the circuit judge clearly wrong in reaching the conclusion that the evidence so clearly demonstrates that the boy was injured before the train was parted as to render his evidence to the contrary unbelievable?

In view of the superior advantage a trial judge has for deciding whether evidence presents a jury question, and, especially, where the evidence is of the nature of that in this case, it requires a strong case against his conclusion to warrant the appellate tribunal in concluding, not only that he was wrong, but clearly so. Hence the initial decision in such a situation is infrequently disturbed.

Under the rules governing the matter, whether error essential to reversal exists in such a case as this, is often so shadowy as to render the requirement that it must clearly appear, the deciding factor. That, occasionally such a situation results in a disagreement is most natural, and unavoidable, unless there be such willingness to surrender deliberately formed judgment as to endanger the strength of the court. We have been unable to reach a unanimous conclusion here. The majority are constrained by careful study of the case not to condemn the decision complained of, while the minority are constrained to the contrary, all testing the evidence by the same rules of law.

It will not serve any valuable purpose to place on record an opinion discussing the evidence in detail. The trial judge evidently appreciated the legal test to be applied in determining whether the evidence presented a jury question. It seems we cannot do better than to substantially adopt his opinion. It bears satisfactory indications of his having carefully considered the evidence in all its bearings. Moreover, counsel for appellant on the oral argument seemed to be unable to find serious fault with the judge's statements except as to one particular which the judge, evidently, regarded as trifling, under the circumstances.

The opinion was rendered on the motion to change the verdict so as to favor defendant. It was this, in effect:

The facts are fresh in my mind. As I viewed the case before submitting the case to the jury, and as I view it now, there has been no change. Plaintiff's case rests wholly upon the boy's story. He is eleven years old. His is the only testimony as to how the accident occurred. It is not corroborated by a single witness. His father, his aunt, and Joseph Taylor only gave evidence tending to impeach the evidence of the brakeman as to whether trains were uncoupled while moving. So the claim of negligence in this instance rests wholly on the testimony of the boy, eleven years old.

Opposed to the boy's evidence, we have that of the entire train crew of five men; Ernest Maddy, the brakeman, Ryder, the head brakeman, Arens, the fireman, Dingman, the conductor, and Buttrick, the engineer. They all testified, positively, that the train had stopped at the time they were opening the coupling, and that at least two attempts, most of them were positive there were three, were made before the front section was clear and moved away.

Suppose the five men who testified to the contrary of the boy as to the train not stopping are, in a measure, interested; they are corroborated by the evidence of five witnesses, W. H. Tierney, Oscar Gallagher, Patrick Gallagher, E. C. Juley, and C. H. Smith, that while the unbroken train stood there, they found the boy's toes and some blood spots ahead of the rear section. These five witnesses who were not members of the train crew thus testified, to what defendant's counsel denominate a physical fact,—the location of the toes and blood spots. Oscar Gallagher further testified that he was head switchman in the yard; that it was his duty to switch the cars after the engine laid up; that he was on duty that night; that he was just going to work, and that those cars had not been touched by their switch engine since he had left them. Besides, there is the fact that Juley went within twenty-five feet of the boy where he lay on the ground after his injury and the train was yet coupled up.

Further, there were four boys. Plaintiff produced one of them to say how the accident happened. Defendant produced one who did not know anything about the matter. Lawrence Van Husen, the other, was just as positive that the boys

caught on to the train while it was moving as young Delvaux is that the train was uncoupled. Juley, who was called by Maddy and furnished the handkerchief with which to tie the boy's leg, corroborated Maddy. These are the main facts. I may have erred in submitting the case to the jury. I was then firmly of the opinion that the facts were such that the jury could not do otherwise than decide as I have indicated and am disappointed. The plaintiff had the burden of proof. Does the boy's evidence under the circumstances outweigh the testimony of all the other witnesses so as to warrant finding, to a reasonable certainty, in his favor? I think not. Eleven witnesses contradicted him. Five of them, especially as to the blood spots and finding the toes ahead of the rear section. The entire train crew testified that the train had stopped to allow uncoupling. Maddy says the entire train stood there as he called for help while the boy lay on the ground. Juley responded and said the same thing.

The foregoing abridgment of the trial court's opinion seems a fair statement of the case. The majority failed to find any efficient infirmity in it, and so the judgment must be affirmed.

*By the Court.*—So ordered.

SIEBECKER, KERWIN, and BARNES, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on December 7, 1915.